

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 28, 2017

**BY ECF/EMAIL TO CHAMBERS**
Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    RE:    *United States* **v.** *Avtandil Khurtsidze and Andriy Petrushyn,* **17 Cr. 350 (KBF)**

Dear Judge Forrest:

    The Government writes to request that the Court schedule a conference at which the Court may inquire into a potential conflict of interest involving counsel for co-defendants Avtandil Khurtdize and Andriy Petrushyn (together, the "defendants"). These defendants are each charged in separate, albeit overlapping, conspiracies, involving members and associates of a criminal enterprise referred to as the Shulaya Enterprise. Khurtsidze is charged with, among other offenses, racketeering conspiracy in connection with his role in that Enterprise; Petrushyn is charged in Count Six of the original indictment with a narcotics conspiracy that also included Giorgi Lomishvili, an alleged member of the Shulaya Enterprise.

**Factual Background**

    The defendants were each arrested on or about June 7, 2017, and presented before United States Magistrate Judge Gabriel W. Gorenstein who assigned CJA counsel to each defendant. Guy Oksenhendler, Esq., represented Khurtsidze, and Arnold Levine, Esq., represented Petrushyn. Shortly thereafter, each defendant retained counsel. On or about July 11, 2017, Arkady Bukh, Esq. of the Bukh Law Firm, PLLC, appeared for Petrushyn (Dkt. No. 175). Mr. Bukh was joined by Igor Litvak, Esq., as co-counsel on or about July 16, 2017 (Dkt. No. 180). Khurtsidze's retained counsel, Yuliya Vangorodska, Esq., appeared in the case on or about July 25, 2017. (Dkt. No. 197). On September 8, 2017, the Court held a pretrial conference involving Khurtsidze, among others, at which time Farrukh Nuridinov, Esq., appeared on Khurtsidze's behalf. (*See* Minute Entry, September 8, 2017).

    Based on conversations with Mr. Litvak and Mr. Nuridinov, as well as the Government's review of the addresses provided by both Mr. Bukh and Ms. Vangorodska (1123 Avenue Z, Brooklyn, New York 11235), the Government believes that each of these four attorneys is associated with the Bukh Law Firm. In particular, both Mr. Litvak and Mr. Nuridinov have

informed the Government that they act as counsel to the Bukh Law Firm in certain matters, including this matter.

Moreover, and as discussed with Mr. Nuridinov, the Government has determined that another co-defendant, Nazo Gaprindashvili, a/k/a "Anna," paid and attempted to pay for Khurtsidze's retention of Ms. Vangorodska in connection with this case, and did so in one case with stolen funds. As reflected in bank records provided by Ms. Vangorodska in response to a request by the Government, on or about July 18, 2017, Gaprindashvili provided a check from her personal bank account, made payable to Vangorodska, P.C., in the amount of $5,000. Those records indicate that this check "bounced" and was returned on the basis of insufficient funds on or about July 21, 2015.

As discussed at her bail review hearing on August 9, 2017, the Government's investigation of co-defendant Nazo Gaprindashvili has revealed evidence of a series of unauthorized money transfers and payments by Gaprindashvili using funds belonging to her former employer. As discussed with Mr. Nuridinov, the Government believes that one such unauthorized transfer of funds was directed on or about July 24, 2017, by Gaprindashvili to Khurtsidze's counsel in order to pay for the retention of Ms. Vangorodska, Mr. Nuridinov, or both.

Based on a bank document provided to the Government by Gaprindashvili's former employer, the Government has determined that, on or about July 24, 2017, an unauthorized payment of $5,000 was sent from an account belonging to Gaprindashvili's former employer to a recipient described in that document as "Sq Law Offices of Brooklyn." Bank records provided by Ms. Vangorodska reflect the receipt on the same day of a payment from "Square Inc" in the amount of $4,824.85. The website for Square, a payment processing company, indicates that, for certainly manually entered transactions processed by Square, a service fee of 3.5% plus $0.15 applies to each transaction. In this case, $5,000, less 3.5% and $0.15, results in $4,824.85, *i.e.*, the amount deposited in Ms. Vangorodska's account on July 24, 2017. *See* SquareUp.Com, "What Are Square's Fees," *available at* https://squareup.com/help/us/en/article/5068-what-are-square-s-fees.

Based on the above, the Government believes that, after bouncing her initial check to Khurtsidze's counsel, Gaprindashvili stole $5,000 from her employer's account, which she transmitted to Khurtsidze's counsel via a Square payment processing device (*i.e.*, "*Sq* Law Offices.").[1]

---

[1] The Government attaches as Exhibits A and B copies of Gaprindashvili's former employer's bank statement and Ms. Vangorodska's bank statement, respectively. The Government is awaiting the return of a higher-quality image of Exhibit A, and apologizes for the pixilation on that document. Exhibit B was originally provided to the Government in a redacted format by Ms. Vangorodska; as provided to the Court, the Exhibit B contains additional redactions by the Government.

## Applicable Law

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States* v. *Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002).

District courts have two separate obligations where there is a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Second, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

The Government currently takes no position as to whether Petrushyn or Khurtsidze's counsel labors under a *per se* or an actual conflict. *Cf. Armienti* v. *United States*, 313 F.3d 807, 810 (2d Cir. 2002) (describing types of conflicts); *Armienti* v. *United States*, 234 F.3d 820, 823-24 (2d Cir. 2000) (same). However, a potential conflict, at the least, warrants inquiry by the Court in this case. "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *United States* v. *Klitti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *Perez*, 325 F.3d at 125. "In the multiple representation situation," for example, "the defendant 'can be advised by independent counsel of the dangers' of such matters as 'one defendant's cooperating with the government,' and make a knowing and intelligent decision that he wishes to continue to be represented by his attorney despite the attorney's representation of another accused." *Id.* (quoting *United States* v. *Fulton*, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conduct[s] a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Id.*[2]

---

[2] Judge Kaplan has observed that

> The Second Circuit has considered a number of different factors in determining whether a conflict can be waived including, among other things, (1) whether disqualifying the defendant's chosen counsel would create "real prejudice" to the defendant based on the length of the representation and/or counsel's familiarity with the case, (2) whether there is a possibility that the attorney could be called as a witness at the defendant's trial or implicated in the defendant's alleged crimes, (3) whether the continued representation would conflict with the attorney's own personal financial or liberty interests, as opposed to the interests of a current or former client, (4)

\* \* \*

These facts set forth above present at least two potential conflicts that the Government respectfully suggests warrant inquiry by the Court and, if appropriate, an allocution of Petrushyn and Khurtsidze regarding waiver of any potential conflicts. Specifically, these facts reveal a potential overlap in representation of the defendants, as well as the possibility that attorneys associated with Khurtsidze may be called as witnesses to acts indicative of the existence of the racketeering conspiracy charged against Khurtsidze and Gaprindashvili. The Government submits, moreover, that an inquiry as to the nature of the relationship between the four relevant attorneys is warranted, including an inquiry as to the extent of joint access to files, paralegals, associates, and fees.

In order to ensure an independent allocution and waiver of any potential conflicts, if appropriate, the Government respectfully requests that the Court convene separate conferences for Petrushyn and Khurtsidze.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

by: ___/s/__Andrew C. Adams_____
Andrew C. Adams
Assistant United States Attorneys
(212) 637-2340

---

whether, if the conflict concerns the interests of another client, the attorney's relationship with the other client is continuing or has been terminated, (5) whether any other current or former client affected by the conflict has initiated or joined in the motion to disqualify defendant's chosen counsel; and (6) the availability of measures that might limit the dangers posed by the conflict, such as restricting an attorney's cross-examination of a former client.

*United States* v. *Stein*, 410 F. Supp.2d 316, 328 (S.D.N.Y. 2006) (international citations omitted).