UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
UNITED STATES OF AMERICA,

17 Cr. 350 (S.D.N.Y.) (KBF)

- v. -

RAZHDEN SHULAYA and
AVTANDIL KHURTSIDZE

Defendants.
-------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE OTHER BAD ACTS EVIDENCE**
**(Motion *in Limine* No. 2)**

Defendants Razhden Shulaya and Avtandil Khurtsidze jointly move to exclude from trial any evidence of the prior bad acts that the government listed in its April 16, 2018 letter. As discussed below, the uncharged misconduct should be excluded under Federal Rule of Evidence 404(b), is not relevant to the charges here and should be excluded under Federal Rule of Evidence 401 and is so salacious as to unduly prejudice the defendants and needlessly cumulative and should be excluded under Federal Rule of Evidence 403.

**1. Proposed Government Testimony**

According to the Government's April 16, 2018 letter filed with this Court, 17-cr-350 (S.D.N.Y.) (KBF), Doc. No. 689, Filed 04/16/18 (the "Bad Acts Letter"), it will seek to introduce at trial evidence (a) concerning co-defendant Azer Arslanouk purportedly providing Shulaya access to a brothel in exchange for protection (Bad Acts Letter, p. 7); (b) a February 2016 birthday gift to Shulaya of a crossbow (Bad Acts Letter, p. 5); (c) a September 7, 2016 assault (Bad Acts Letter, p. 8); and (d) an expletive-laden telephone call on January 18, 2017 (Bad Acts Letter, p. 6). This improper bad acts evidence is highly prejudicial, is unnecessary for

the government's case and is unrelated to the predicate crimes that the government has charged the enterprise with committing and any of the overt acts in the indictment. *See* 17-cr-350 (S.D.N.Y.) (KBF), Doc. No. 685, Filed 04/12/2018, pp. 7 – 13, 14 – 15.) For the reasons below, those four pieces of other bad act evidence must be excluded from trial.

**2. Legal Standard**

Under Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." That is, the proposed evidence must have some tendency to make the existence of "any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985)) (internal quotation marks omitted); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010). Pursuant to Rule 403, even evidence relevant under the FRE 401 standard may be excluded when "its probative value is substantially outweighed by a danger of … : unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." When considering a Rule 403 challenge to proffered evidence, if "an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." *Old Chief v. United States*, 519 U.S. 172, 182 – 183 (1997).

Federal Rule of Evidence 404(b) excludes even otherwise relevant and admissible evidence of a defendant's other crimes, wrongs or other bad acts for purposes of showing the defendant's character or to show that he or she acted in accordance with that character. Such evidence of other bad acts can only be admitted for limited reasons. This is because bad acts

evidence may improperly implicate a defendant's character and a propensity for criminal conduct, and has been long singled out for careful analysis.

**3. The Other Bad Act Evidence all Falls Within FRE 404(b) and Must Be Excluded**

The government's proffered evidence concerning (a) the brothel; (b) the crossbow; (c) the September 7, 2016 assault; and (d) the January 18, 2017 phone call do not satisfy the requirements of Rule 404(b), nor should the evidence be introduced under any other theory.

As an initial matter, the government in its Bad Acts Letter does not specify its theory of admissibility for the various evidentiary matters it details, stating instead, with respect to the entire 13-pages of bad acts,

> The evidence described herein is admissible because it constitutes direct substantive proof of the charges in the Indictment; demonstrates the nature, existence, and background of the racketeering enterprise alleged in the racketeering conspiracy charged in Count One, and the additional conspiracy charges alleged in the Indictment; and demonstrates the defendants' membership in the racketeering enterprise and the related charged conspiracies. In addition, some of the evidence described below is admissible pursuant to Fed. R. Evid. 404(b), because it demonstrates the defendants' knowledge, intent, motive, opportunity, identity, and lack of mistake or accident with respect to the charges in the Indictment. Finally, much of the evidence constitutes *Giglio* material for the Government's cooperating witnesses.

Bad Acts Letter, p. 1. Where, as here, the government has not identified what alleged facts it intends to introduce under what evidentiary theories, it unreasonably hinders the defendants' ability to challenge such evidence. For purposes of this motion, then, the defendants proceed as though the government contends that each factual proffer in the letter is admissible under every theory in its preamble.

**a. The Other Bad Acts Evidence Does Not Constitute Direct Substantive Proof of the Charged Crimes Nor Does it Establish the Defendants' Membership in an Enterprise or the Charged Conspiracies**

The government states that all of the "evidence described [in the Bad Acts Letter] … constitutes direct substantive proof of the charges in the Indictment." Bad Acts Letter, p. 1. That

is not so. In the four instances of prior bad acts that are the subject of this motion, none is proof of any of the charges in the indictment. The racketeering predicates and overt acts involve no charges of prostitution; the crossbow gift does not help to establish any of the racketeering, wire fraud or cigarette charges; the September 7, 2016 Khurtsidze assault is not described as having any relationship to the racketeering or wire fraud charges; and the January 18, 2017 telephone call demonstrates nothing other than grotesque language in a private telephone call that is not alleged to have resulted in any conduct underlying the charges here.

Nor do these acts show that either defendant was a member of the charged enterprise. Evidence about a brothel run by a co-defendant not on trial will not show that these defendants were part of an enterprise; will not show that either defendant knowingly agreed to associate with an enterprise; will not show a pattern of racketeering activity (as prostitution is not charged here) and does not go to the interstate commerce element. Similarly, the gift of a crossbow, even if, as the government contends, "an elaborate gift" from a co-conspirator, establishes none of the elements of the crime. The government cannot even pretend to connect Khurtsidze's September 7, 2016 assault to any of the charged misconduct, and rests on a description of it as Khurtsidze "twice [striking]" a person "once in the face and once in the abdomen," but providing no connection between that stand-alone assault and the charged racketeering or wire fraud conspiracies. Likewise, with the January 18, 2017 telephone call, the defendants are described as discussing "an unspecified dispute." It is hard to imagine, given the vast scope of discovery – wiretaps, informants, video surveillance – that if this telephone call was connected to the defendants' membership in an enterprise, that the government would not have proof of such connection. Absent that proof, it cannot be considered evidence of the crimes in the S9 indictment or membership in a criminal enterprise. None of the evidence about these other bad

acts constitutes direct substantive proof of the charged crimes nor does any of it establish membership in an enterprise or conspiracy and it all must therefore be excluded from trial.

**b. The Other Bad Acts Evidence is Not Admissible as Background Evidence**

To the extent that the government seeks to introduce these prior bad acts as background to the racketeering and conspiracy offenses charged in the indictment and therefore not subject to 404(b) analysis, they are misguided. This "argument[] wrongly assume[s] that uncharged criminal activity that provides context or is relevant to the charged conduct need not be treated as other act evidence under Rule 404(b)." *United States v. Kassir*, 79 Fed. R. Evid. Serv. 425, 2009 WL 976821 (S.D.N.Y. April 9, 2009). Where, as here, the government offers the evidence only as background evidence, it cannot avoid Rule 404(b) analysis. That is because "evidence of uncharged criminal activity must do more than provide context or be relevant; it must meet the *Gonzalez* criteria, such as by being inextricably intertwined with the charged conduct." *Id.*, at *2, citing *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997).

Here, the government has not argued that the bad acts evidence is inextricably intertwined with the charged misconduct. To the contrary. It states simply that such evidence "demonstrates the nature, existence, and background of the racketeering enterprise." Bad Acts Letter, p. 1. That is not a sufficient basis for the government to avoid the exacting admissibility analysis of Rule 404(b).

**c. Under Rule 404(b), the Other Bad Acts Must Be Excluded from Evidence**

The core problem with other crimes evidence, as the United States Supreme Court pointed out in *Michelson v. United States*, 335 U.S. 469 (1948), is not that such evidence lacks persuasive value. The vice of such evidence is just the opposite, i.e., it may "over persuade" a jury:

> The inquiry [into character] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Id*. at 475-76.

In *United States v. Murray*, 103 F.3d 310, 316 (3d Cir. 1997), then-Judge Alito emphasized the need for trial judges "to exercise particular care in admitting such evidence," and noted at least two reasons for the exercise of such caution: First, the line between what is permitted and what is not prohibited under Rule 404(b) is sometimes quite subtle. Second, Rule 404(b) evidence sometimes carries a substantial danger of unfair prejudice and thus raises serious questions under FRE. 403. *Id*. Evidence proffered under Rule 404(b), must meet three basic criteria before it can be properly admitted at trial. It must be: offered for a proper purpose; relevant; and of the type whose probative value substantially outweighs the potential for unfair prejudice. *Huddleston v. United States*, 485 U.S. 681, 691 (1987).

Fed. R. Evid. 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or accident.

Rule 404(b) must be read with Rule 403, which provides for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Despite the inclusive approach to other act evidence that controls in the Second Circuit, *United States v. Pitre*, 960 F. 2d 1112 (2d Cir. 1992), the probative value of evidence offered under Fed. R. Evid. 404(b) is still subjected to

Fed. R. Evid. 403 analysis. *United States v. Levy*, 731 F.2d 997 (2d Cir. 1984). This balancing test is a codified version of the common law tradition that shielded a defendant from evidence of guilt by reputation. *United States v. Cook*, 538 F.2d 1000, 10004 (5th Cir. 1976). This Circuit and others have reversed convictions when district courts have improperly admitted 404(b) evidence that adversely affected the jury's consideration of the evidence. *See United States v. Figueroa*, 618 F. 2d 934 (2d Cir. 1980) (reversing conviction where evidence was adduced concerning a prior drug sale and the defense was based upon the theory that conduct had never taken place.); *United States v. Samuel Charles Richards*, 13-2287, slip op. (6th Cir. Feb. 6, 2015) (reversing conviction where trial court erred in admitting evidence of prior drug convictions and abused its discretion in finding probative value was not outweighed by prejudice.)

Here, the government has not provided a specific evidentiary basis for the admissibility of any of the four challenged prior bad acts, instead merely reciting the statutory incantation set forth in FRE 404(b). *See* Bad Act Letter, p. 1. How, then, can it be determined that a co-defendant not on trial operated a brothel was relevant to the knowledge that Khurtidze (or even Shulaya) had about the charged crimes? How does such proof show intent, motive, identity, lack of mistake or accident with respect to the S9 charges? The same question arises when considering the gift of a crossbow, the September 7, 2016 assault and the January 18, 2017 telephone conversation.

The government lists the brothel as proof of "tributes and elaborate gifts from criminal underlings," but that does not go establish any of the 404(b) factors. The crossbow is listed as relevant to the use of violence and intimidation, but is described as CC-1's gift at a birthday party – offering no information as to how or why the gift meets the 404(b) requirements. The September 7, 2016 assault is placed within the gambling operation and related extortions and

violence, but the Bad Acts Letter provides no relationship other than geographic between the assault and the charged crimes. Last, the January 18, 2017 telephone call in which the defendants discuss finding and confronting a female co-defendant is, as the government concedes, part of "an unspecified dispute." As such, how could it possibly be known whether that conversation falls within 404(b)? The government has failed to show that any of the four prior bad acts the defense challenges can properly be considered Rule 404(b) evidence. This evidence will all have the tendency to demonstrate the criminal propensity of defendants Shulaya and Khurtsidze and it all must, therefore, be excluded.

**4. The Bad Act Evidence is Inadmissible Under FREs 401 and 403**

Even if not formally prior bad act evidence under FRE 404(b), the four acts listed here must be excluded under Federal Rules of Evidence 401 and 403. As discussed above, none of these four acts has any tendency to make an element of the crime – or any fact supporting the conviction of the charged crimes – more or less probable than it would be without the evidence. None of these four acts pertain to the underlying predicates or the overt acts as charged in the S9 indictment. None of them makes the existence of the criminal enterprise more likely than it would be without that evidence. The prostitution testimony purportedly pertains to protection for access to the brothel, but all the government can say about the brothel is that Arslanouk brokered a deal. Whether that deal was effectuated, for how long it lasted, what the terms of it were are all questions that remain unanswered. Such a vaguely described act does not make the criminal enterprises – racketeering or wire fraud – more or less likely.

The crossbow, too, is described in such vague terms – a gift from a purported criminal underling – that it is meaningless for purposes of proving up each of the charged crimes.

Recognizing the lack of connection between the September 7, 2016 assault and the charged crimes, the government does not even seek to draw a connection there.

Similarly, acknowledging the thin reed upon which the January 18, 2017 phone call rests, the prosecution admits that it involved an unknown dispute, providing no relationship between that call and the charged crimes. None of these bad acts tends to make the charged crimes – not the racketeering conspiracy, not the wire fraud and not any of the underlying acts – more probable to have occurred and thus must be excluded under FRE 402.

Even, however, if relevant under FRE 401, each of these four acts is so sensational or inflammatory as to render whatever limited probative value it may have had substantially outweighed by the risk of prejudice.

To introduce the specter of paid sex work to this trial is to risk unreasonably prejudicing the defendants. Khurtsidze, for example, is not alleged to have had any involvement with prostitution, but once a jury hears of Arslanouk's relationship with the brothel operation, Khurtsidze will necessarily be tainted by the specter of that testimony. The crossbow, too, will be introduced to show that Shulaya was a violence-prone, armed criminal gang leader, even though it was an unsolicited gift (and one to which Khurtsidze, of course, had no connection.)[1] The risk to the defendants of the jury forming an unfair prejudice against them because of testimony about a crossbow warrants its exclusion. As for the September 7, 2016 assault and the January 18, 2017 telephone call, both are likely to highly inflame the jury. The government's argument that the September incident is related to the charged crimes is so tenuous that this piece of evidence is readily outweighed by the unfair prejudice the jury will form when they see the

[1] As this motion further illustrates, Avtandil Khurtsidze risks undue prejudice should his trial not be severed from that of co-defendant Razhden Shulaya, whose alleged criminal conduct is substantially more extensive and expansive that the acts with which Khurtsidze is charged.

video of the assault.[2] And the telephone call involving the defendants discussing "f---ing" a female co-defendant, even when there is no proof that any such threats were made to her or that the defendants contemplated committing the acts discussed on the call (or even communicated the threats themselves to the co-defendant), will surely inflame the jury, and unreasonably so given the weak (or, rather, absent) proof connecting that conversation to the criminal enterprises as charged.

Further, to the extent that the four acts are to be introduced to establish the criminal enterprises, the government has provided 13 pages of other acts that it contends will prove the existence of each enterprise and these limited four acts are thus unnecessary and needlessly cumulative. All of these acts must therefore be excluded under Rule 403, as their "probative value is substantially outweighed by a danger of … : unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**5. Conclusion**

In all of the instances cited above, the prosecution is seeking to bootstrap the acts into a criminal propensity argument while justifying the introduction under the strictures of Rule 404b and other specious arguments. For all of the reasons set forth herein, Razhden Shulaya and Avtandil Khurtsidze respectfully request that this Court rule that the evidence of (a) operation of a brothel; (b) the gift of a crossbow; (c) the September 7, 2016 assault; and (d) the January 18, 2017 telephone call all be excluded from trial.

Dated: New York, New York
April 23, 2018

Respectfully submitted,

[2] Just as Khurtsidze is likely to be prejudiced by the proof against Shulaya, Shulaya will be prejudiced by this proof against Khurtsidze, further militating in favor of severance.

___/s/ Megan Wolfe Benett_____
Megan Wolfe Benett, Esq.
750 Third Avenue, 32nd Floor
New York, NY 10017
(212) 973-3406
(212) 972-9432 (fax)
mbenett@kreindler.com
*Attorney for Defendant Avtandil Khurtsidze*

___/s/ Arthur Ken Womble______
Ken Womble, Esq.
Zeman & Womble, LLP
66 Willoughby Street
Brooklyn, NY 10013
(718) 514-9100
(917) 210-3700 (fax)
womble@zemanwomblelaw.com
*Attorney for Defendant Avtandil Khurtsidze*

___/s/ Anthony Cecutti_____
Anthony Cecutti, Esq.
The Astor Building
217 Broadway, Suite 707
New York, New York 10007
Ph: (212) 619-3730
Cell: (917) 741-1837
Fax: (212) 962-5037
anthonycecutti@gmail.com
*Attorney for Defendant Razhden Shulaya*

___/s/ Jennifer Rushing Louis-Jeune_____
Jennifer Rushing Louis-Jeune
Law Office of Jnnnifer R. Louis-Jeune
733 3rd Avenue, 15th Floor
New York, NY 10017
212-203-9058
Fax: 212-219-0958
Email: Jennifer@JLJLaw.com
*Attorneys for Defendant Razhden Shulaya*