

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

<em>The Silvio J. Mollo Building</em>
<em>One Saint Andrew's Plaza</em>
<em>New York, New York 10007</em>

September 4, 2018

**BY ECF**

Hon. Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re: *United States v. Avtandil Khurtsidze*, S9 17 Cr. 350 (KBF)

Dear Judge Forrest:

  Avtandil Khurtsidze is a violent criminal by choice. Khurtsidze had no need to act as an enforcer for the Shulaya Enterprise. A successful athlete, Khurtsidze was neither financially distressed nor vulnerable to the pressures of addiction or fear. Nevertheless, Khurtsidze chose to use his status and his strength as a weapon in the service of a notorious criminal, Razhden Shulaya. Khurtsidze participated in vicious beatings, personally threatened and assaulted Shulaya's targets, and became among the most prominent and intimidating members of Shulaya's criminal entourage. Despite being confronted with extensive video and audio evidence of his crimes, including recordings of beatings and his participation in the Shulaya Enterprise's most audacious fraud, Khurtsidze chose loyalty to Shulaya over acceptance of responsibility for his crimes. To reflect the gravity of those choices, to protect the public from Khurtsidze's apparently undeterred loyalty to Shulaya, and to deter others who might make the same choices, the Government submits that a significant period of incarceration – greater than that captured by the United States Sentencing Guidelines calculation – is warranted in this case.

<em>Background</em>

  The Shulaya Enterprise was an organized criminal group operating in the Southern District of New York and elsewhere between roughly 2014 and 2017, when agents of the Federal Bureau of Investigation ("FBI") dismantled it. During its existence, the Shulaya Enterprise pursued a spectrum of criminal activity. Among other things, the Shulaya Enterprise transported and sold stolen property, ran an illegal gambling parlor, extorted debtors to its gambling operations, laundered criminal proceeds, and planned to rig slot machines to defraud casinos. (Presentence Investigation Report ("PSR"), at ¶¶ 12, 15). The Shulaya Enterprise was controlled by a "*vor v zakone*." *Vor v zakone* is a Russian phrase that translates to "Thief-in-Law" and refers to "a fraternal order of elite criminals that dates back to the time of the czars."[1] A *vor v zakone*—

---

[1] *See generally* Robert L. Friedman, Red Mafiya: How the Russian Mob Has Invaded America (Little Browns & Co. 2000) at 9.

commonly known as a *vor*—stands at the highest level of Russian organized criminal groups, akin to a Godfather within an Italian organized criminal group. Traditionally, a *vor* demands and receives *obshchak,* or tribute, from criminals and laypersons within the *vor*'s protection, licenses criminal activity by others, and resolves disputes between members of the criminal community. (PSR ¶ 13).

*Khurtsidze's Role*

1. *Violence*

Khurtsidze played a critical role within the Shulaya Enterprise from the earliest days of its existence in New York.  As Shulaya established his reputation as a powerful and violent criminal force, Khurtsidze was a loyal soldier and a presence that signaled both Shulaya's power and his potential for violence.  As described by multiple witnesses at trial, in 2015, a confidential source ("CS-1") and another man, Mark Nektalov, were summoned to an apartment in Brooklyn, where Shulaya and a large group of males were surrounding an older Georgian male. The group surrounding the older male included Khurtsidze, Mamuka Chaganava, and Zurab Dzhanashvili. Shulaya physically assaulted the older male and verbally berated him. CS-1 later learned from Shulaya and other members of the Shulaya Enterprise that the victim of this attack had disrespected Shulaya in public, thereby challenging Shulaya's power and status as a *vor*. As described by CS-1, the purpose of his being summoned to this assault by Shulaya was for Shulaya – surrounded by his enforcers, including Khurtsidze – to demonstrate for CS-1 Shulaya's power.

Khurtsidze remained a symbol and tool for violence over the following years.  Again in 2015, Khurtsidze, along with Chaganava and others, backed Shulaya in a confrontation with "Pelmen," an associate whom Shulaya accused of dealing narcotics without Shulaya's permission. Shulaya then slapped and berated Pelmen, while Chaganava, holding a knife, guarded Shulaya and prevented Pelmen's escape. Pelmen eventually admitted his drug dealing and promised that he would respect Shulaya's status in the future. In fact, Pelmen later made a particularly elaborate tribute to Shulaya in the form of a crossbow, with which Khurtsidze and Shulaya posed, next to Pelmen, at Shulaya's birthday party in 2016.

As described in detail at trial by CS-1 and Zurab Dzhanashvili, on or about February 22, 2016, Khurtsidze escorted and guarded Mamuka Chaganava inside the Shulaya Enterprise's illegal gambling establishment (the "Poker House") until Shulaya arrived. Thereafter, Khurtsidze and Dzhanashvili stood watch outside the "office" of the Poker House, that is., a room within the Poker House in which no security cameras were installed, while they listened to the sounds of an assault. Shortly thereafter, Shulaya sent Chaganava out of the office. CS-1 observed that Chaganava had been assaulted, and specifically that his eyes and nose were bloodied. Images of Chaganava immediately following this assault were among the most disturbing images presented at trial. Although Shulaya – not Khurtsidze – assaulted Chaganava, Khurtsidze participated directly in this assault by guarding Chaganava in the Poker House office immediately before Shulaya assaulted his underling and by standing watch outside the office while the assault occurred.

Khurtsidze's role went beyond simply guarding Shulaya and intimidating Shulaya's victims. Khurtsidze personally assaulted CS-1, as well as an associate of co-defendant Artur Vinokurov, inside Shulaya's Poker House. On July 25, 2016, CS-1 was summoned to the Poker House to be confronted by Shulaya, Khurtsidze, and others, regarding a purported discrepancy in the accounting sheets from the poker game that had concluded the previously day. Because it is This incident became a particular focus of Khurtsidze's defense. At this point, the Court is well aware that the video and audio recordings of this incident belie any suggestion that Khurtsidze acted in self-defense or in defense of Shulaya when he viciously struck CS-1. Khurtsidze, acting in support of Shulaya and in defense only of Shulaya's pride, was unprovoked in this attack, which sent CS-1 reeling to the back wall of the Poker House.

In the wake of that attack, Khurtsidze continued to assault and extort for the profit of the Shulaya Enterprise. On September 1, 2016, Khurtsidze, Ubilava, and CS-1, acting at Shulaya's direction, confronted a particular debtor to the Shulaya Enterprise's Poker House ("Debtor-1") at a sidewalk café in Brooklyn. During this meeting, which was again recorded using an audio recording device worn by CS-1, Khurtsidze threatened Debtor-1 regarding the debt owed to the Shulaya Enterprise. At the conclusion of this shakedown, Debtor-1 provided CS-1 with over $1,000 in cash, which CS-1 gave to Khurtsidze for onward delivery to Shulaya. On September 7, 2016, Khurtsidze again accompanied CS-1 for a meeting with Debtor-1, during which Khurtsidze threatened Debtor-1 unless Debtor-1 repaid the Shulaya Enterprise for Debtor-1's gambling debt. On the same day, Khurtsidze twice struck an associate of Vinokurov while that person cowered in the corner of the Poker House. Hours later, and following his extortion of Debtor-1, that same victim remained standing at attention in the Poker House as Shulaya and Khurtsidze counted the money that Khurtsidze had retrieved for his boss.

Khurtsidze's loyalty to Shulaya continued even after the hasty closure of the Poker House. On January 18, 2017, during an intercepted call between Shulaya and Khurtsidze, the two men discussed whether to find and confront Nazo Gaprindashvili as a result of an unspecified dispute. In the course of the conversation, both Shulaya and Khurtsidze discussed "fucking" Gaprindashvili, a reference to physical, and perhaps sexual, violence against her. Furthermore, Shulaya refers to *a prior* incident in which Khurtsidze threatened to break the legs of another individual, and Khurtsidze reconfirmed that he was ready to commit acts of violence at Shulaya's direction ("I already told you once and I got it." "[I]t does not make any difference whether she made you mad or me mad.").[2]

   2. *Fraud*

Khurtsidze was not merely "muscle" within the Shulaya Enterprise. He was also an active and informed conspirator within the Enterprise's "casino scheme," as described at trial. The Court

---

[2] Gaprindashvili was herself a contributor to the Shulaya Enterprise's illegal activities, most prominently through financing the Enterprise through a particularly egregious exploitation of her infirm employer. Khurtsidze took advantage of that fraud by having Gaprindashvili attempt to pay for Khurtsidze's original counsel in connection with his defense in this case.

is now familiar with the specifics of the casino scheme and the many steps required to cheat slot machines using Shulaya's stolen code. In particular, the Court heard testimony from Evgheni Melman regarding Khurtsidze's role in locating targeted slot machines; testimony regarding the content of Khurtsidze's personal cellphone, which contained videos necessary for perfecting the fraud; and audio recordings and transcripts of Khurtsidze and Shulaya expressly discussing the physical skill needed to increase the fraudsters' success in executing the fraud.

### *Guidelines*

The U.S. Probation Department calculates Khurtsidze's United States Sentencing Guidelines sentencing range to be 57 to 71 months' imprisonment, based on a total offense level of 25 and a criminal history score of 86. PSR ¶¶ 86, 89, 111. The defendant agrees Probation's calculation is correct. *See* Def. Sentencing Letter at 10, ECF Doc. 989. The Government also agrees that Probation has correctly calculated Khurtsidze's Guidelines sentencing range.

### *Discussion*

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range": that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see* 18 U.S.C. § 3553(a)(2); "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); the Guidelines range itself, *see* 18 U.S.C. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see* 18 U.S.C. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," 18 U.S.C. § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

The Government respectfully submits that the application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) supports the imposition of a sentence greater than the Guidelines range of 57 to 71 months' imprisonment, as reflected in the Guidelines sentencing calculation.

Khurtsidze was among the most prominent and violent members of the Shulaya Enterprise. From his position, he had knowledge of a range of illegal conduct in which the Shulaya Enterprise was engaged, and personally participated in crimes ranging from simple extortion to brutal assaults to fraud. He was a trusted confidant of the Enterprise's leader, entrusted with information and tasks reserved only for the deepest of insiders. The Guidelines' calculations understate this defendant's culpability, both as an absolute matter and in relation to his co-defendants. In particular, Khurtsidze was more prolific a criminal than co-defendant Nazo Gaprindashvili, whose most heinous offense would ultimately redound to Khurtsidze's benefit in the form of stolen funds for his attorneys' fee. Gaprindashvili rightly received a sentence of 57 months' imprisonment; Khurtsidze would rightly receive a significantly higher term of incarceration.

First, such a sentence is an appropriate reflection of the nature, circumstances, and seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(1), (2)(A). Khurtsidze was actually violent and provided a constant threat of violence for the benefit of the Enterprise and its criminal activities. He participated both as a guard and a direct participant in brutal violence leveled at Shulaya's perceived enemies, and used his athletic prowess and physical size to scare others' into complying with Shulaya's demands. Khurtsidze participated alongside Shulaya in the many of the most physically terrifying acts conducted in furtherance of the Enterprise and, unique among Shulaya's underlings, *also* participated in the sophisticated fraud that comprised the casino scheme.

Communicating the gravity of these offenses to Khurtsidze is a proper attempt to engage him in an honest accounting of the lapse in compassion, judgment, and decency represented by his crimes. Khurtsidze in particular made clear his unwillingness to engage in any honest accounting of those defaults in the months and moments leading up to his trial, repeatedly making false claims regarding the content and import of videos of his assaults. This sentence is an opportunity for Khurtsidze to understand and grapple honestly with the fear that he purposefully inflicted on others over the course of years.

Second, a substantial sentence is necessary to afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Such a sentence is necessary and appropriate to provide a countervailing warning to those, like Khurtsidze, who might consider joining a group like the Enterprise or secretly exploiting victims on its behalf. This is particularly true here, where other defendants have remarked that Khurtsidze's own fame helped draw them into the Enterprise. An above-Guidelines sentence would alert others that their knowing association to, and promotion of, organized crime merits significant punishment. For Khurtsidze – a man who has repeatedly disclaimed any moral default for his behavior and who has attempted at every turn to minimize the importance of the fear he created – specific deterrence is a factor that weighs particularly in favor of a lengthy sentence.

Third, and similar reasons, Khurtsidze presents an example of a defendant from whom the public plainly requires continued protection. His loyalty to Shulaya was not necessary or forced; it did not arise from adverse circumstances that have now been put to rest. Rather, Khurtsidze's loyalty was gratuitous and violent. He extorted, defrauded, and beat people at Shulaya's direction without reason, provocation, or justification. The Court should have no confidence that Khurtsidze has changed at all from the man who declared his willingness to attack his own co-conspirator, Gaprindashvili, simply because she had offended his boss, Shulaya.

\* \* \*

For these reasons, the Government respectfully submits that a significant sentence of incarceration, greater than that suggested in the applicable Guidelines range, is justified in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _____/s/_____
Andrew C. Adams
Andrew Thomas
Assistant United States Attorneys
(212) 637-2340/-2106